UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMMY WILLIAM MUSGROVE,

       Plaintiff,

v.                               Case No:   3:15-cv-1258-J-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

### OPINION AND ORDER

      Plaintiff, Timmy William Musgrove, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

      The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

- 3 -

1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed an application for a period of disability and DIB on June 22, 2012, alleging disability beginning April 27, 2012.  (Tr. 148-49).  Plaintiff's application was denied initially on August 29, 2012, and upon reconsideration on October 15, 2012.  (Tr. 87-91, 93-97).  Plaintiff requested a hearing and, on March 5, 2014, an administrative hearing was held before Administrative Law Judge Gregory J. Froehlich ("the ALJ").  (Tr. 33-54).  On April 2, 2014, the ALJ entered a decision finding that Plaintiff was not under a disability from April 27, 2012, through the date of the decision. (Tr. 15-32).  Plaintiff filed a request for review which the Appeals Council denied on September 2, 2015. (Tr. 1-6).  Plaintiff initiated this action by filing a Complaint (Doc. 1) on October 22, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 27, 2012, the alleged onset date.  (Tr. 20).  At step two, the ALJ found that Plaintiff had the following severe impairments: obstructive sleep apnea, migraines, diabetes mellitus, degenerative disc disease of the cervical spine, status post remote ORIF of left elbow, major depressive disorder, generalized anxiety disorder and fibromyalgia.  (Tr. 20).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except that the claimant requires the option to sit or stand every 30 minutes.  The claimant can occasionally balance, stoop and climb ramps and stairs.  The claimant cannot climb scaffolds.  The claimant must void concentrated exposure to wetness, vibrations or work around mechanical parts or unprotected heights.  The claimant is limited to performing simple, routine, repetitive tasks.  The claimant retains the ability to relate adequately to coworkers and supervisors, but is limited to only occasional contact with the public.  The claimant retains the ability to deal with changes in the routine work setting.

(Tr. 22).  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an equipment rental manager.  (Tr. 26).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 26-27).  Specifically, the ALJ found that Plaintiff can perform such occupations as photo copy machine operator, mail clerk, and office helper.  (Tr. 27).  The ALJ concluded that Plaintiff had not been under a disability from April 27, 2012, through the date of the decision, April 2, 2014.  (Tr. 28-29).

## II.     Analysis

Plaintiff raises four issues on appeal:  (1) whether the ALJ erred by according "significant weight" to the state agency evaluators' opinions but failing to provide an explanation for why the limitation findings of state agency physician Dr. Weisberg were not included in the RFC finding; (2) whether the ALJ erred by failing to articulate good cause for not crediting the opinions of treating physicians Dr. Mhatre and Dr. Patel; (3) whether substantial evidence supports the ALJ's

rationale for not crediting the opinion of Dr. Neidigh; and (4) whether the ALJ's decision is filled with errors of fact that taints the ALJ's credibility finding of Plaintiff.

### A. Whether the ALJ erred by according "significant weight" to the state agency evaluators' opinions but failing to provide an explanation for why the limitation findings of state agency physician Dr. Weisberg were not included in the RFC finding.

The record shows that state agency physician Dr. Robert Weisberg reviewed the medical evidence and concluded that Plaintiff could perform light work with occasional lifting and carrying up to 20 pounds, stand/walking or sitting up to 6 hours each during an 8 hour day. (Tr. 66-71). Dr. Weisberg indicated Plaintiff was limited to occasional pushing/pulling with the upper extremities, and occasional crawling.    (Tr. 68).    Dr. Weisberg noted Plaintiff could never climb ladders/ropes/scaffolds, but could frequently climb ramps/stairs, balance, stoop, kneel, and/or crouch.  (Tr. 68).  Dr. Weisberg also indicated Plaintiff could not perform overhead reaching and frequent front/lateral reaching with the left arm. (Tr. 68).  Dr. Weisberg noted environmental limitations against concentrated exposure to extreme cold and vibration, and all exposure to work hazards.  (Tr. 69).

In his decision, the ALJ did not specifically address Dr. Weisberg's opinion but generally stated that "[t]he opinions of the State agency evaluators are given significant weight.  These unbiased sources reviewed the records and issued opinions consistent with one another and with the record as a whole."  (Tr. 26).

Plaintiff argues that the ALJ erred by failing to explain why he was not adopting Dr. Weisberg's upper extremities limitation findings despite according the opinion significant weight. (Doc. 14 p. 10).  Plaintiff notes that Dr. Weisberg's opinion was more limiting than the previous state agency reviewer Dr. Minal Krishnamurthy, who examined Plaintiff in October 2012, and thus, that their opinions were not consistent with one another as the ALJ found. (Doc. 14 p. 12).

Plaintiff contends that the ALJ's failure to include Dr. Weisberg's upper extremities limitation findings is not harmless error because as there is no vocational evidence regarding the impact of Dr. Weisberg's limitation findings on Plaintiff's ability to perform the occupations cited by the vocational expert.  (Doc. 14 p. 11).

In response, Defendant argues that the ALJ did not commit reversible error by according more weight to the opinion of Dr. Krishnamurthy who noted no limitations on pushing/pulling or manipulation.  (Tr. 78-79).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and Appeals Council levels of administrative review.  Social Security Ruling (SSR) 96-6p.  Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*

In this case, the ALJ did not specifically address Dr. Weisberg's opinion, but generally acknowledged the opinion and provided that the opinion was entitled to significant weight. Despite according the opinions significant weight, the ALJ failed to adopt Dr. Weisberg's upper extremity limitations findings in his RFC and provided no explanation for his decision to do so. In fact, the reasoning the ALJ did give for according the state agency opinions significant weight (i.e., that they were consistent with each other and the record) is inaccurate and raises the issue of whether the ALJ was aware that Dr. Weisberg's opinion was more limited than that of Dr. Krishnamurthy. The ALJ's failure to more fully explain his reasoning frustrates the Court's ability to determine whether the ALJ's opinion is based on substantial evidence.

As a nonexamining physician, Dr. Weisberg's opinion was not entitled to any deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). If the ALJ's only error was his failure to properly address Dr. Weisberg's opinion, the error may have been harmless had the remainder of the opinion sufficiently explained the basis upon which the ALJ reached his decision. Here, however, as will be shown below, the ALJ made other errors in his treatment of the medical evidence of record. Accordingly, on remand, the Court will require to re-evaluate Dr. Weisberg's opinion and, if the opinion is given significant weight, explain which parts and the reasons therefore.

### B. Whether the ALJ erred by failing to articulate good cause for not crediting the opinions of treating physicians Dr. Mhatre and Dr. Patel.

Plaintiff argues that the ALJ erred by failing to articulate good cause for according little weight to the opinions of treating physician Dr. Minesh Patel and treating psychiatrist Dr. Umesh Mhatre. (Doc. 14 p. 19). Defendant responds that the ALJ properly discounted each opinion. (Doc. 17 p. 13).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The Court begins with the record as to Dr. Patel. The record shows that Plaintiff was seen from January 2013 through December 2013 by Dr. Patel. (Tr. 359-92). Plaintiff was treated on January 11, 2013. (Tr. 364-65). He was diagnosed with hypertension, hypercholesterolemia, gastroesophageal reflux disease, fibromyalgia, and migraine. He was told to avoid large meals and activities that placed excessive strain on the low back such as heavy lifting, bending, or twisting at the waist or sitting for prolonged periods of time. On an undated visit, he presented with difficulty breathing while laying down. (Tr. 367-68). His blood pressure was elevated and he was diagnosed with obstructive sleep apnea and hypertension. (Tr. 367-68). Blood work performed on April 3, 2013 revealed elevated liver enzymes, elevated bilirubin, and elevated GGT. (Tr. 359). Progress notes the following months were similar. (Tr. 374-75). On June 24, 2013, he underwent a right upper quadrant ultrasound. (Tr. 362). The findings were consistent with diffuse fatty infiltration of the liver. (Tr. 362). On June 27, 2013, he presented with fatty liver. (Tr.378-80). Plaintiff was diagnosed with elevated liver function, fatty liver, fibromyalgia, and hypertension. He was started on Tramadol for fibromyalgia pain. (Tr. 380).

Plaintiff presented in July 2013 with obstructive sleep apnea, weight of 300 pounds and a BMI of 40.3, elevated blood pressure, and feeling tired. (Tr. 381-82). Plaintiff was referred for C-Pap titration. (Tr. 382). He was treated for hypertension through the fall of 2013. (Tr. 383-86).

He had claudication pain in both legs and was referred for a venous and arterial doppler. (Tr. 386). Along with his other symptoms, Plaintiff's blood sugar levels were high in November 2013. (Tr. 388-90).   He was told to refill Tramadol and Flexeril for pain associated with lumbar spine degenerative disc disease and was referred to a gastroenterologist.   He was prescribed Metformin, test strip and lancets, and Zofran for diabetes mellitus type II. (Tr. 389).   On December 5, 2013, he presented with hypertension. (Tr. 391-92).   His nausea was unchanged and his blood pressure was elevated.   He was diagnosed with gastroesophageal reflux disease, diabetes mellitus, hypertension, nausea, and fibromyalgia. (Tr. 392).   On January 13, 2014, Dr. Patel treated Plaintiff. (Tr. 393-94).   Plaintiff was diagnosed with hypertension, gastroesophageal reflux disease, diabetes mellitus, fibromyalgia, and non-alcoholic fatty liver. (Tr. 394).

On February 4, 2014, Dr. Patel completed a multiple impairment questionnaire. He was diagnosed with fibromyalgia, migraine, and cervical spine degenerative disc disease per examination and MRI study.   Plaintiff had generalized weakness, myalgia, head pain with nausea, and neck pain. His pain occurred daily and severity varied from hour to hour and activity precipitated the pain. His pain level was a seven to eight which was moderately severe. His fatigue range was severe and he needed to sit after showering. His medication had not completely relieved his pain. During an eight hour workday, Plaintiff could only sit for up to one hour and stand or walk for up to one hour at a time. He was advised not to sit continuously in a work setting.  Plaintiff needed to get up every fifteen to thirty minutes and move around. He could not stand/walk continuously in a work setting. Additionally, Plaintiff could never lift and carry over 50 pounds and had significant limitations in repetitive reaching, handling, fingering and lifting due to severe bilateral arm weakness with pain. Plaintiff needed to rest as his hands would go limp. He would have moderate limitations in grasping, turning, and twisting with the left and right hands, using his

fingers and hands for fine manipulation and using his arms for reaching including overhead. Side

effects included nausea, sleepiness, and brain fog. His symptoms would likely increase if he were

placed in a competitive work environment and his condition interfered with the ability to keep his

neck in a constant position. Plaintiff could not do a full time job that required activity on a sustained

basis. His experience of pain and fatigue would constantly be severe enough to interfere with

attention and concentration. Plaintiff's limited physical abilities had caused depression and anxiety

over life's challenges. He would need to take unscheduled breaks every fifteen minutes for fifteen

minutes before returning to work. Plaintiff would likely be absent more than three times a month

and needed to avoid temperature extremes and no pushing, pulling, kneeling, bending, or stooping.

These limitations applied as of 2007.  (Tr. 348-55).

      In his decision, the ALJ addressed Dr. Patel's opinion as follows:

> Little weight is given to the medical source statement completed by Dr.
> Patel, the claimant's treating physician (Ex. 10F).  In February 2014, Dr.
> Patel completed a Medical Source Statement and found the claimant could
> not perform full-time work on a sustained basis.  Dr. Patel's assessment is
> inconsistent with his own treatment notes, showing that the claimant's
> fibromyalgia was controlled with medication (Ex. 7F).  Dr. Patel's
> restrictions are given little weight as they are not consistent with his own
> treatment notes, and are not bolstered by objective findings or clinical
> observations in the record.  Greater weight is provided to the findings and
> opinions in Dr. Patel's treatment notes.

(Tr. 25).

      Here, the Court finds that the ALJ failed to adequately provide good cause for rejecting Dr.

Patel's opinion.  First, as Plaintiff notes, the only specific example showing that Dr. Patel's opinion

is inconsistent with his own treatment notes is to Exhibit 7F, which are not even his own treatment

notes, but the notes of Dr. Mhatre.  (Doc. 14 p. 21).  The ALJ provides no examples of how his

opinion conflicts with his treatment notes or other evidence in the record, instead relying on the

boilerplate statement that Dr. Patel's opinion is "not consistent with his own treatment notes, and

are [is] not bolstered by objective findings or clinical observations in the record." (Tr. 21). Such a generalized explanation does not constitute good cause to discount the opinion of Plaintiff's treating physician.

As to Dr. Mhatre, the record shows that Plaintiff visited him from May 2011 through August 2011, for anxiety and depression. (Tr. 291-92). On May 5, 2011, he quit his job as he was tired of the problems on the job. (Tr. 292). On August 4, 2011, his depression was stable and he was told to stop his Seroquel. (Tr. 292). Dr. Mhatre also treated Plaintiff from April 2012 through January 2013. (Tr. 289-90, 325, 330-37). On July 5, 2012, Plaintiff said he could not work due to chronic fatigue. (Tr. 289). Dr. Mhatre indicated that Plaintiff's mental status was appropriate with normal mood and intact memory. (Tr. 325). On October 2, 2012, Dr. Mhatre again noted appropriate mental status, normal mood, and intact memory. (Tr. 325).

On January 23, 2013, Dr. Mhatre completed a psychiatric impairment questionnaire. (Tr. 330-37). Plaintiff was treated since February 14, 2008 for anxiety and depression and was assigned a Global Assessment of Functioning ("GAF") of 60. His prognosis was guarded. Plaintiff had symptoms of poor memory, appetite disturbance, sleep disturbance, mood disturbance, emotional lability, anhedonia, and loss of interest. Plaintiff had marked limitations in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, and sustain an ordinary routine without supervision. He also had marked limitations in his the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a persistent pace without rest periods, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

Plaintiff was incapable of even "low stress" work and his impairments were likely to produce good and bad days.  (Tr. 330-37).

In his decision, the ALJ accorded little weight to Dr. Mhatre's opinion for the same reasons that were given for according Dr. Patel's opinion little weight.  (Tr. 26).  However, unlike his treatment of Dr. Patel's opinion, the ALJ correctly cited to Dr. Mhatre's treatment notes to support his claim that Dr. Mhatre's opinion was inconsistent with his treatment notes.  (Tr. 26).  Furthermore, the ALJ's review of Dr. Mhatre's treatment notes earlier in the opinion reflect that Plaintiff's mental health symptoms improved with medication.  Thus, the Court finds that the ALJ presented good cause for according Dr. Mhatre's opinion little weight.

On remand, the Court will require the ALJ to reevaluate the opinion of Dr. Patel and, if the ALJ discounts the opinion, provide good cause, supported by substantial evidence for doing so.

### C. Whether substantial evidence supports the ALJ's rationale for not crediting the opinion of Dr. Neidigh.

Plaintiff argues that the ALJ erred by according little weigh to the opinion of Dr. Neidigh because the reasons the ALJ gave to support his finding were not supported by substantial evidence.  (Doc. 14 p. 13).  Plaintiff contends that contrary to the ALJ's finding, Dr. Neidigh's opinion is consistent with the medical evidence of record.  (Doc. 14 p. 14).

The record shows that Dr. Neidigh performed a psychological examination of Plaintiff on February 24, 2014.  (Tr. 405-410).  Dr. Neidigh noted that Plaintiff reported "brain fog" and excessive fatigue, had become increasingly disorganized, and could not finish his schooling.  Dr. Neidigh noted that Plaintiff reported that he was unable to concentrate and could not get out of bed some days, that he was under treatment for anxiety and depression, that his mood varied with the degree of pain, and that he had an irregular sleep pattern and difficulty concentrating.  Dr. Neidigh noted that Plaintiff reported having a lot of anxiety when he was working and if he was confronted

with a situation, he would get anxious.  Dr. Neidigh noted that Plaintiff had extreme difficulty with a backward serial sevens counting task.  On the Weschsler Abbreviated Scale of Intelligence, Plaintiff was functioning in the borderline range of intellectual ability.  MMPI-2 testing revealed a profile that was extremely somatically preoccupied.  The results suggested that depression may be masked by his focus on somatic symptoms and might be manifested as episodes of tension, distress, weakness, and fatigue.  The Beck Anxiety Inventory reflected mild to moderate difficulties with anxiety.  Dr. Neidigh found that based on his current clinical picture, Plaintiff did not appear to be able to maintain steady employment.  Plaintiff was experiencing difficulties with depression and anxiety which couple with fibromyalgia appeared to render him incapable of maintaining stable employment.  Dr. Neidigh diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and fibromyalgia.

Dr. Neidigh also completed a psychiatric impairment questionnaire.  (Tr. 396-403).  His prognosis was guarded with clinical findings of poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, psychomotor agitation, difficulty thinking or concentrating, decreased energy and generalized persistent anxiety as evidenced by MMPI-2 report.  Dr. Neidigh noted that Plaintiff's primary symptoms included fatigue, isolation, depression, and pain.  Dr. Neidigh found that Plaintiff would have marked limitations in his ability to perform activities within a schedule; to maintain regular attendance and be punctual within customary tolerance; to complete a normal workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without rest periods.  Dr. Neidigh found that Plaintiff's moods fluctuated with pain and fatigue, that psychiatric conditions exacerbated pain and physical symptoms and that Plaintiff had a low IQ or reduced intellectual functioning based

on his WAIS testing.  Dr. Neidigh found that Plaintiff was incapable of even low stress work and

that Plaintiff was likely to be absent from work more than three times a month.

In his decision, the ALJ explained his reasoning for according little weight to Dr. Neidigh's

opinion as follows

> Little weight is given to the opinion of Dr. Neidigh, who performed a
> psychological evaluation of the claimant in February 2014 at the request
> of the claimant's representative (Ex. 13F).  Dr. Neidigh opined that the
> claimant was incapable of performing even "low stress" jobs and was
> likely to miss more than three days of work each month (Ex. 12F).  Dr.
> Neidigh examined the claimant on one occasion and offered his opinion
> only for the purpose of providing treatment referrals.  Dr. Neidigh's
> assessment was based primarily on the claimant's report of subjective
> symptoms, which, for the reasons stated in detail above, are not reliable.
> Dr. Neidigh's opinion is given little weight because it is inconsistent with
> the objective medical evidence of record and not supported by the record
> as a whole.

(Tr. 25).

The Court finds that the ALJ's explanations for according little weight to Dr. Neidigh's

opinion little weight are insufficient.  First, it is unclear what the ALJ means by stating that Dr.

Neidigh offered his opinion "only for the purpose of providing treatment referrals."  Dr. Neidigh

stated in his psychological evaluation that Plaintiff was referred for a psychological examination

"to assist his attorneys in dispositional planning."  (Tr. 406).  The Eleventh Circuit has held that

"the mere fact that a medical report is provided at the request of counsel or, more broadly, the

purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of

the report." *Tavarez v. Comm'r of Soc. Sec.*, 2016 WL 75424 (11th Cir. Jan. 7, 2016) (citing

*Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)).  Thus, it appears that the ALJ impermissibly

discredited the opinion of Dr. Neidigh on the basis that he provided his opinion at Plaintiff's

counsel's request.  Furthermore, the ALJ's reasoning that Dr. Neidigh's opinion was based on

Plaintiff's report of subjective symptoms is insufficient, because as will be shown below, the ALJ erred in considering Plaintiff's credibility.

On remand, the ALJ shall reevaluate Dr. Neidigh's opinion and articulate with specificity his reasoning for according the opinion the weight he finds appropriate.

### D. Whether the ALJ's decision is filled with errors of fact that taints the ALJ's credibility finding of Plaintiff.

Plaintiff argues that the ALJ's hearing decision contains several factual errors regarding Plaintiff's activities of daily living, functional capacity, and his school attendance, all of which tainted the ALJ's credibility analysis. (Doc. 14 p. 22). Plaintiff contends that the ALJ seemed to be under the false impression that Plaintiff attended classes after his onset date, misstated the content of Plaintiff's testimony as far as the weight he could lift/carry, and failed to properly analyze the facts in the case. (Doc. 14 p. 22). Defendant does not directly address these allegations in her brief, arguing generally that substantial evidence supports the ALJ's decision.

If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 Fed. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

Here, the Court finds Plaintiff is correct that the ALJ's credibility finding seemingly misstates that that Plaintiff attended classes after his alleged onset date.  In discrediting Plaintiff, the ALJ noted that "[t]he claimant testified that he attended school after he stopped working and completed two classes." (Tr. 24).  As Plaintiff notes, however, he took these classes prior to his April 27, 2012, onset date.  (Tr. 47).  Accordingly, it was improper for the ALJ to rely on Plaintiff attending classes as undermining his disability when he took these classes before he alleges he was disabled.

The Court, however, disagrees with Plaintiff's contention that the ALJ mischaracterized Plaintiff's testimony concerning his ability to lift or carry.  At the hearing, Plaintiff was asked how much weight he could carry a short distance and Plaintiff testified "I could probably carry 50 feet -- 50 pounds, you know 20 feet once."  Plaintiff was asked how much he could do more regularly, "say like a couple of hours at a time," and Plaintiff responded "Maybe a half a pound."   In his decision, the ALJ stated that "[t]he claimant testified that he is able to lift or carry a half-pound frequently and 50 pounds occasionally."  (Tr. 23).  The SSA regulations define "frequently" as from one-third to two-thirds of the time and occasionally as very little up to one-third of the time. *See* SSR 83-10; 96-9p.  While Plaintiff did not directly testify using the words "occasionally" and "frequently" his estimates fall within the ranges of these terms as defined by the SSA. Accordingly, the Court finds no error in the ALJ's characterization of Plaintiff's testimony concerning his ability to lift or carry.

Further, the Court does not find that the ALJ erred in his characterization of Plaintiff's daily activities.   Besides his factual error that Plaintiff's taking of classes undermines his credibility, the ALJ otherwise accurately summarized Plaintiff's activities of daily living.

On remand, the ALJ shall reevaluate Plaintiff's credibility noting that Plaintiff did not take classes after his alleged onset date.

**III.     Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 18 -